1
2
3
4
5

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

6
7
8

PROGRESSIVE INSURANCE
COMPANY; SAFECO INSURANCE
COMPANY,

              Plaintiffs,

9

v.

10
11
12

SACRAMENTO COUNTY COACH
SHOWCASE; COUNTY COACH, INC.;
PREVOST CAR (US), INC.; VANNER,
INC.; and DOES I through X, inclusive,

13

              Defendants.

14
15

AND ALL RELATED ACTIONS

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2:07-CV-01087-PMP-LRL

O R D E R

16    Presently before the Court is Defendant Prevost Car (US), Inc.'s Motion to

17  Dismiss (Doc. #63) and supporting memorandum (Doc. #64), filed on August 22, 2008.

18  Plaintiffs filed an Opposition (Doc. #65) on September 8, 2008.  Defendant Prevost Car

19  (US), Inc. filed a Reply (Doc. #67) on September 9, 2008, and an Amended Reply (Doc.

20  #69) on September 18, 2008.

21  **I. BACKGROUND**

22    According to the Second Amended Complaint ("SAC"), Jerry O'Conner

23  ("O'Conner") owned a 2000 Country Coach recreational vehicle (the "RV").  (Second Am.

24  Compl. ["SAC"] (Doc. #72) ¶ 9.)  Plaintiffs Progressive Insurance Company and Safeco

25  Insurance Company were the insurers of the RV as of May 2006.  (Id.)  Defendants Country

26  Coach, Inc. ("Country Coach"), Vanner, Inc. ("Vanner"), and Prevost Car (US), Inc.

1   ("Prevost") were the purported manufacturers of the RV. (Id. ¶ 11.)

2       On approximately May 19, 2006, the RV caught fire after being serviced by
3   Defendant Sacramento Country Coach Showcase ("Sacramento"). (Id. ¶ 10.) Defendants
4   allegedly manufactured and/or installed the battery equalizer and other parts and
5   components of the RV in a careless manner, causing the fire and a total loss of the RV. (Id.
6   ¶ 13.) The battery equalizer and its components also purportedly were defective as to
7   design, manufacture, and warnings. (Id. ¶ 23.) The RV and its parts were covered by
8   express and implied warranties that Defendants allegedly conveyed to O'Conner. (Id. ¶ 19.)
9   Plaintiffs were obligated to pay O'Conner for the damage caused by the fire under their
10  respective insurance policies. (Id. ¶ 29.)

11      Subsequently, on July 10, 2007, Plaintiffs filed suit against Sacramento and
12  Country Coach in Nevada state court. (Pet. for Removal (Doc. #1), Ex. B.) On August 15,
13  2007, Country Coach removed the case to this Court based on diversity jurisdiction. (Pet.
14  for Removal.) On June 5, 2008, Plaintiffs filed an Amended Complaint, adding Prevost as
15  a Defendant. (Am. Compl. (Doc. #46).) While the Motion to Dismiss at issue here was
16  pending, the parties stipulated to allow Plaintiffs to file the SAC, adding Vanner as a
17  Defendant. (Order (Doc. #71).) The parties also agreed that Prevost's pending Motion to
18  Dismiss the Amended Complaint shall be deemed to apply to the SAC. (Id.) In the SAC,
19  Plaintiffs allege claims for negligence against Country Coach, Vanner, and Prevost (count
20  1), negligence against Sacramento (count 2), breach of warranty against all Defendants
21  (count 3), strict products liability against Country Coach, Vanner, and Prevost (count 4),
22  and subrogation against all Defendants (count 5). (SAC at 2-5.) Country Coach,
23  Sacramento, and Vanner also filed cross claims against the other Defendants. (Doc. #5,
24  #56, #78, #81, #84.)

25      Prevost now argues the SAC should be dismissed with respect to Prevost because
26  the terms of Prevost's limited warranty ("Limited Warranty") bar Plaintiffs' warranty

2

1  claims, and the economic loss doctrine bars Plaintiffs' claims for negligence and strict
2  liability.  Prevost also argues all of Plaintiffs' claims contain insufficient factual detail to
3  state a claim for relief.

4  **II.  MOTION TO DISMISS**

5          When ruling on a motion to dismiss, the Court "must construe the complaint in
6  the light most favorable to the plaintiff and must accept all well-pleaded factual allegations
7  as true."  Siaperas v. Mont. State Comp. Ins. Fund, 480 F.3d 1001, 1003 (9th Cir. 2007)
8  (quotation omitted).  In the complaint, the plaintiff must set forth "a short and plaint
9  statement of the claim showing that [the plaintiff] is entitled to relief."  Fed. R. Civ. P.
10  8(a)(2).  Although a plaintiff's factual allegations need not be detailed, a plaintiff must
11  allege more "than labels and conclusions, and a formulaic recitation of the elements of a
12  cause of action will not do."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).
13  Dismissal is proper only if no cognizable legal theory exists or the plaintiff has alleged
14  insufficient facts to support a cognizable legal theory.  Siaperas, 480 F.3d at 1003.  "'The
15  issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to
16  offer evidence to support the claims.'"  Hydrick v. Hunter, 500 F.3d 978, 985 (9th Cir.
17  2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

18          If the Court considers evidence outside of the pleadings when examining a
19  motion to dismiss for failure to state a claim, the Court generally must convert the motion
20  into a motion for summary judgment and give the nonmoving party an opportunity to
21  respond.  United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).  However, the Court
22  may "consider certain materials—documents attached to the complaint, documents
23  incorporated by reference in the complaint, or matters of judicial notice—without
24  converting the motion to dismiss into a motion for summary judgment."  Id. at 908.
25  Additionally, the Court may consider extrinsic documents, including contracts and
26  insurance policies, when "the plaintiff's claim depends on the contents of a document, the

1       defendant attaches the document to its motion to dismiss, and the parties do not dispute the

2       authenticity of the document, even though the plaintiff does not explicitly allege the

3       contents of that document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th

4       Cir. 2005).

5             Prevost requests that the Court consider Prevost's Limited Warranty in this

6       Motion to Dismiss because Plaintiffs' express warranty claim against Prevost relies on this

7       document. Because the SAC alleges the existence of express warranties by all Defendants,

8       Plaintiffs' warranty claim against Prevost depends on this document, and the parties do not

9       dispute the authenticity of the Limited Warranty, the Court will consider the Limited

10      Warranty when ruling on the Motion to Dismiss.

11              **A. Breach of Express and Implied Warranties**

12             Prevost argues Plaintiffs' claims for breach of express and implied warranties are

13      barred by the express terms of the Limited Warranty because the fire occurred several years

14      after the 24 month warranty expired. Prevost also argues the Limited Warranty expressly

15      disclaimed all implied warranties in capitalized language that conspicuously brings the

16      disclaimer to the buyer's attention.

17             Plaintiffs respond that the breach of warranty occurred during the 24 month

18      period when the RV left Prevost's facility with the defective battery equalizer. Further,

19      Plaintiffs argue the statute of limitations only required Plaintiffs to pursue the claim within

20      six years for express warranties and within four years for implied warranties of when

21      Plaintiffs knew or should have known of the breach. Plaintiffs claim they knew of the

22      breach on the date of the fire on May 19, 2006 and therefore the July 10, 2007 claim was

23      timely. Plaintiffs also contend the breach of warranty claims should not be excluded

24      because Plaintiffs seek to prove the Limited Warranty is contrary to public policy and is an

25      adhesion contract.

26      ///

1    Prevost replies that the statute of limitations does not apply because the Limited

2   Warranty's express terms extend warranty only to repairs to correct any malfunction that

3   occurred during the warranty period. Prevost argues cases reject the notion that hidden

4   defects discovered after the warranty period expires give rise to a claim for breach of

5   warranty. Prevost also contends Plaintiffs' claims that implied warranty disclaimers are

6   against public policy and are adhesion contracts are without support. Finally, Prevost

7   argues that although the Uniform Commercial Code permits a court to find a sales contract

8   unconscionable, the SAC makes no allegations of unconscionability.

9                  1. Express Warranty

10    Because jurisdiction in this case is based on diversity of citizenship, the Court

11   applies the substantive law of Nevada, the forum state. See Conestoga Servs. Corp. v.

12   Executive Risk Indem., 312 F.3d 976, 980-91 (9th Cir. 2002). However, the Nevada

13   Supreme Court has not discussed interpretation of an express warranty specifically. "Where

14   the state's highest court has not decided an issue, the task of the federal courts is to predict

15   how the state high court would resolve it." Giles v. Gen. Motors Acceptance Corp., 494

16   F.3d 865, 872 (9th Cir. 2007) (quotation omitted). "In answering that question, this court

17   looks for 'guidance' to decisions by intermediate appellate courts of the state and by courts

18   in other jurisdictions." Id. (quotation omitted). Other courts have held that general contract

19   interpretation principles govern the interpretation of express warranties. See, e.g., S.

20   Energy Homes, Inc. v. Wash., 774 So. 2d 505, 511 (Ala. 2000); Chaurasia v. Gen. Motors

21   Corp., 126 P.3d 165, 169 (Ariz. Ct. App. 2006); Med. City Dallas, Ltd. v. Carlisle Corp.,

22   251 S.W.3d 55, 61 (Tex. 2008). The Court concludes Nevada would do the same.

23    Under Nevada law, when the facts are not in dispute, contract interpretation is a

24   question of law. Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc., — P.3d —, 2008

25   WL 4790609, *8 (Nev. 2008) (en banc). Generally, the Court construes unambiguous

26   contracts according to their plain language. Sheehan & Sheehan v. Nelson Malley & Co.,

5

1   117 P.3d 219, 223-24 (Nev. 2005). A basic rule of contract interpretation is to give each

2   word effect if possible. Musser v. Bank of Am., 964 P.2d 51, 54 (Nev. 1998). However,

3   when interpreting a contract, "the court shall effectuate the intent of the parties, which may

4   be determined in light of the surrounding circumstances if not clear from the contract

5   itself." Sheehan, 117 P.3d at 224 (quotation omitted).

6            Here, the Limited Warranty states it "covers Coach REPAIRS to correct any

7   malfunction occurring during the WARRANTY PERIOD." (Mot. to Dismiss (Doc. #63), at

8   Ex. A to Ex. 1 at 1.) The warranty period extended from "the date the coach is delivered to

9   the first retail purchaser and is valid for a period of 24 months regardless of mileage." (Id.

10   (emphasis omitted).) Thus, by its plain language, the Limited Warranty covers only

11   malfunctions which occur only during the 24-month warranty period. Although the SAC is

12   not clear as to when the RV was delivered to the first retail purchaser, Plaintiffs do not

13   contest that the 24 month period expired by the time the battery equalizer malfunctioned in

14   May 2006. Because the malfunction occurred outside of the 24 month warranty period,

15   Prevost did not breach the express warranty when the battery equalizer malfunctioned.

16   Plaintiffs' breach of express warranty claims are therefore barred under the plain language

17   of the express warranty.[1]

18            Nevertheless, Plaintiffs argue that the breach of warranty "occurred" during the

19   24 month warranty period because the RV left Prevost with the defective battery equalizer.

20   The Nevada Supreme Court has never addressed this issue specifically. However, the

21   United States Court of Appeals for the Ninth Circuit, analyzing California law, affirmed the

22   dismissal of express warranty claims because the repairs were made after the warranty

23

24            [1] Plaintiffs argue their express warranty claim is saved by the statute of limitations. However,
     because the warranty period had expired before the May 2006 fire, Prevost did not breach the warranty
25   when the battery equalizer malfunctioned. Without a breach of the warranty, Plaintiffs had no cause
     of action that could accrue under the statute of limitations. The statute of limitations is therefore
26   inapplicable.

6

period expired. <u>Clemens v. DaimlerChrysler Corp.</u>, 534 F.3d 1017, 1023 (9th Cir. 2008). Although the plaintiff argued the defect in the head gasket existed before the warranty expired, the Court stated California applies the general rule "that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed." <u>Id.</u> at 1022-23 (quotation omitted). The Court summarized the rationale behind this rule:

> Every manufactured item is defective at the time of sale in the sense that it will not last forever; the flip-side of this original sin is the product's useful life. If a manufacturer determines that useful life and warrants the product for a lesser period of time, we can hardly say that the warranty is implicated when the item fails after the warranty period expires. The product has performed as expressly warranted. Claims regarding other buyer expectations and the manufacturer's state of mind properly sound in fraud and implied warranty.

<u>Id.</u> at 1023; <u>see also</u> <u>Dewey v. Volkswagen AG</u>, 558 F. Supp. 2d 505, 518-19 (D.N.J. 2008) ("[T]he case law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects which are typically not discovered until after the expiration of the warranty period." (quotation omitted)). The Court concludes Nevada would adopt a similar rule.

Under this rationale, Prevost's alleged breach of the Limited Warranty did not occur during the warranty period. The Limited Warranty expressly covered only those repairs that occurred within 24 months from the date the coach was delivered to the first retail purchaser. The battery equalizer therefore performed as expressly warranted because it malfunctioned only after the warranty period expired. The Court therefore grants Prevost's motion to dismiss count three as to express warranties.

### 2. Implied Warranties

Under the Nevada Uniform Commercial Code ("UCC"), "there is an implied warranty that a good is merchantable and suitable for a particular purpose." <u>Vacation Vill., Inc. v. Hitachi Am., Ltd.</u>, 874 P.2d 744, 747 (Nev. 1994) (citing Nev. Rev. Stat.

§§ 104.2314-2315).  Although warranty exclusions are permitted to allow parties to bargain

to allocate the risk of loss, warranty exclusions generally are disfavored.  Sierra Diesel

Injection Serv., Inc. v. Burroughs Corp., Inc., 890 F.2d 108, 113 (9th Cir. 1989) (applying

Nevada law).  The Nevada UCC defines the requirements for a valid exclusion of implied

warranties:

> [T]o exclude or modify the implied warranty of merchantability or any
> part of it the language must mention merchantability and in case of a
> writing must be conspicuous, and to exclude or modify any implied
> warranty of fitness the exclusion must be by a writing and conspicuous.
> Language to exclude all implied warranties of fitness is sufficient if it
> states, for example, that "There are no warranties which extend beyond
> the description on the face hereof."

Nev. Rev. Stat. § 104.2316(2).

A "conspicuous" term is defined as one "so written, displayed or presented that a

reasonable person against which it is to operate ought to have noticed it."  Id. § 104.1201(j).

Conspicuous terms include the following:

> (1) A heading in capitals equal to or greater in size than the surrounding
> text, or in contrasting type, font or color to the surrounding text of the
> same or lesser size; and
> (2) Language in the body of a record or display in larger type than the
> surrounding text, or in contrasting type, font or color to the surrounding
> text of the same size, or set off from surrounding text of the same size by
> symbols or other marks that call attention to the language.

Id.  Whether a term is "conspicuous" is a decision for the Court.  Id.

Here, the Limited Warranty includes a section titled "OTHER LIMITATIONS,"

which contains the following language:

> EXCEPT FOR THE WRITTEN WARRANTY STATED ABOVE,
> THERE ARE NO OTHER WARRANTIES, EXPRESSED OR IMPLIED,
> INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY
> OF PERFORMANCE OR FITNESS FOR A PARTICULAR PURPOSE,
> WHICH SHALL APPLY TO THE COACH.  PREVOST HEREBY
> DISCLAIMS ANY AND ALL SUCH WARRANTIES.  THE
> PERFORMANCE OF REPAIRS IS THE EXCLUSIVE REMEDY
> UNDER THIS WARRANTY. . . .

(Mot. to Dismiss, Ex. A to Ex. 1 at 3.)  Plaintiffs do not contest that these warranty

1  exclusions satisfy the language and conspicuous requirements under Nevada Revised

2  Statutes sections 104.2316(2) and 104.1201(j). Instead, Plaintiffs argue the warranty

3  exclusions should not be applied because they violate public policy and are part of an

4  adhesion contract.

5  First, Plaintiffs contend that because the Limited Warranty excludes both implied

6  warranties and claims for economic losses,[2] Prevost has cut off any recovery for anyone

7  whose vehicle was damaged in a fire. Plaintiffs argue that this appears to be contrary to

8  public policy protected by the Nevada Supreme Court. However, other than citing Nevada

9  case law holding that one reason behind the economic loss doctrine's preclusion of some

10  claims is that those claims are recoverable under a breach of warranty theory, Plaintiffs cite

11  no authority supporting what public policy is affected here. Further, Prevost did not deny

12  Plaintiffs all recourse because Plaintiffs had recourse under the express warranty if the

13  malfunction occurred during the warranty period. This argument therefore fails.

14  Second, Plaintiffs argue that the Limited Warranty is part of an adhesion contract,

15  as it is a standardized form contract offered on a take it or leave it basis, and thus may be

16  interpreted broadly by the Court. As such, Plaintiffs contend, the interpretation of the

17  warranty and economic loss exclusions can be decided only after discovery. Under Nevada

18  law, an adhesion contract is "a standardized contract form offered to consumers on a 'take it

19  or leave it' basis, without affording the consumer a realistic opportunity to bargain." Burch

20  v. Second Judicial Dist. Court of State ex rel. County of Washoe, 49 P.3d 647, 649 (Nev.

21  2002) (alteration and quotation omitted). Although the Court need not enforce

22  unconscionable contracts or terms, the Court is permitted to enforce adhesion contracts

23

---

24  [2] Besides the exclusion of warranties other than those specified, the Limited Warranty states
   it "does not cover any economic loss, including without limitation, communication, expenses, meals,
25  lodging, loss of use of the coach, loss of revenue, motorcoach replacement charges, towing, loss of
   time, inconvenience, cargo damage or any other cost or expense resulting from a defect covered by this
26  warranty." (Mot. to Dismiss, Ex. A to Ex. 1 at 3.)

where there is "plain and clear notification of the terms and an understanding consent, and if it falls within the reasonable expectations of the weaker party." Id. (alterations, quotations, and footnote omitted).

Here, Plaintiffs argue only that the Limited Warranty might be found to be an adhesion contract. Even if that is correct, Plaintiffs do not argue that the Limited Warranty is unconscionable. Further, viewing the SAC in the light most favorable to Plaintiffs, the SAC contains no allegations that Plaintiffs, or more specifically the insured, did not understand or consent to the Limited Warranty. In fact, the SAC states the "warranties were both written and oral and conveyed to the insured by Defendants." (SAC ¶ 19.) Thus, nothing indicates the Limited Warranty did not fall under the reasonable expectations of the insured. Plaintiffs second argument therefore fails.

Accordingly, the Court grants Prevost's motion to dismiss count three as to implied warranties. Count three is dismissed with regards to Prevost for failure to state a claim upon which relief can be granted

**B. Economic Loss Doctrine**

Prevost argues that Plaintiffs' negligence and strict liability claims are barred by the economic loss doctrine because the total loss of the RV, towing, and loss of use are not recoverable in tort. Although Plaintiffs make reference to damage to personal property, Prevost argues these special damages fail as they are not pled with particularity under Federal Rule of Civil Procedure 9(g). Further, to the extent such personal property consisted of items integrated into the RV, this is not distinct personal property for which tort recovery may lie.

Plaintiffs respond that the loss here is not pure economic loss because much of Plaintiffs' claim covers personal property located inside the RV at the time of the fire. Plaintiffs contend fire damaged not only the RV, but also non-integrated items, such as clothing, kitchen supplies, jewelry, bedding, and electronic equipment. Plaintiffs also argue

Prevost should be subject to tort liability based upon the likelihood that incidents such as this one could cause injury or death to its consumers.

Prevost replies that Plaintiffs attempt to plead facts in their Opposition that were absent in the SAC, such as what personal property was damaged. Prevost continues that even if Plaintiffs had sufficiently pled special damages to the personal property with particularity in the Complaint, the losses to the RV itself still would be barred by the economic loss doctrine.

"The economic loss doctrine marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others." Calloway v. City of Reno, 993 P.2d 1259, 1263 (Nev. 2000) (quotation omitted), overruled on other grounds by Olson v. Richard, 83 P.3d 31 (Nev. 2004) (en banc). Under the doctrine, no tort recovery exists for purely economic losses in either strict products liability or negligence cases. Id. at 1264. A purely economic loss generally is "the loss of the benefit of the user's bargain including pecuniary damage for inadequate value, the cost of repair and replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property." Id. at 1263 (alterations and quotations omitted).

Economic losses therefore are not recoverable "absent personal injury or damage to property other than the defective entity itself." Id. at 1267. For instance, the economic loss doctrine bars recovery in tort when a product injures only itself because the tort concern for safety is minimized and such a claim naturally is understood as a warranty claim. Id. at 1264. The same reasoning applies when an integral component of a larger product causes damage to the product itself because "the injury suffered—the failure of the product to function properly—is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain." Id. at 1267. Thus, the

1  damages recoverable in a tort suit "are limited to physical injury to persons or to property
2  other than the [product] itself." Giles, 494 F.3d at 877 (citing Calloway, 993 P.2d at 1267).

3      Here, according to the SAC, the battery equalizer that allegedly caused the fire to
4  the RV was one of the "parts and components" of the RV. (SAC ¶ 13.) Viewing the SAC
5  in the light most favorable to Plaintiffs, the battery equalizer is therefore an integral
6  component of the RV. Thus, the economic loss doctrine bars both negligence and strict
7  liability recovery for the damage the battery equalizer caused to the RV itself. However,
8  the SAC also alleges damages to "personal property." (Id. ¶¶ 14, 24.) Although the SAC is
9  not clear as to what constitutes the personal property,[3] viewing the SAC in the light most
10 favorable to Plaintiffs, the alleged personal property is property other than the defective
11 entity, the RV, itself. Thus, the economic loss doctrine does not bar Plaintiffs' negligence
12 and strict liability claims to the extent that Plaintiffs allege damage to property not an
13 integral part of the RV itself. The Court therefore grants Prevost's motion to dismiss
14 Plaintiffs' negligence (count 1) and strict liability (count 4) claims against Prevost to the
15 extent that Plaintiffs allege damage to the RV itself. However, Prevost's motion is denied
16 to the extent counts 1 and 4 allege damage to other personal property.

17  **C. Failure to State a Claim**

18     With regard to Plaintiffs' remaining causes of action, Prevost argues Plaintiffs'
19 negligence and strict liability actions fail to state a claim because the SAC lacks facts
20 regarding how or why the RV was designed or manufactured defectively, whether a defect

21

22  [3] Prevost also argues that Plaintiffs' claims of damage to personal property fail as they are
23 special damages not "specifically stated" under Federal Rule of Civil Procedure 9(g). "'Special
   damages' are those types of damages that, although resulting from the wrongful act, are not usually
24 associated with the claim in question and must be plead in order to avoid unfair surprise to the
   defendant." Tipton v. Mill Creek Gravel, Inc., 373 F.3d 913, 922 n.10 (8th Cir. 2004). Here,
25 Plaintiffs' claims of damage to personal property are not "special" as damage to personal property
   within an RV is usually associated with a fire in the RV. Therefore, Rule 9(g) does not affect
26 Plaintiffs' allegations in the SAC.

12

1  existed when the RV left Prevost's control, how or why Prevost was negligent, or how or

2  why the alleged defected caused the fire.  Plaintiffs respond that the SAC is clear as to the

3  allegations and that the defective battery equalizer caused the fire, damaging both the RV

4  and personal property.  Plaintiffs further argue that stating the specifics of how and why the

5  battery equalizer caused the fire would exceed the pleading requirement of a short and

6  concise statement.  Prevost does not reply on this issue.

7                                    1. Negligence

8              Under Nevada law, a plaintiff must satisfy four elements to establish negligence:

9  "(1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages."  Turner v.

10  Mandalay Sports Entm't, LLC, 180 P.3d 1172, 1175 (Nev. 2008) (en banc).  Here, Prevost

11  does not contest that Prevost had a duty of care, but rather that the SAC fails to allege

12  allegations as to how Prevost was negligent.  The SAC alleges that the battery equalizer

13  caused the damage to the RV:

14          On or about May 19, 2006, and at times mentioned, Defendants . . . were
         the owners, employers and/or employees of a manufacturing company,
15          which produced a [RV] which contained a battery equalizer as well as
         other parts and components.  The battery equalizer as well as other parts
16          and components were manufactured and/or installed in such a negligent
         and careless manner so as to cause the [RV] to start on fire, resulting in a
17          total loss of the [RV].

18  (SAC ¶ 13.)  The SAC further alleges that as a direct and proximate result of Defendants'

19  negligence, the RV and other personal property was damaged.  (Id. ¶ 14.)

20              Viewing the SAC in the light most favorable to Plaintiffs, the SAC alleges more

21  than mere labels and conclusions because it states Prevost breached their duty by

22  negligently manufacturing and installing the battery equalizer, which then caused the fire

23  and the resultant damage to the RV and personal property.  Plaintiffs have alleged a claim

24  for negligence and thus are entitled to offer evidence to support their claim.

25  ///

26  ///

1

### 2.  Strict Liability

2       Under Nevada law, to establish strict liability a plaintiff must show three
3  elements:  "1) the product had a defect which rendered it unreasonably dangerous, 2) the
4  defect existed at the time the product left the manufacturer, and 3) the defect caused the
5  plaintiff's injury."  Neal-Lomax v. Las Vegas Metro. Police Dep't, 574 F. Supp. 2d 1193,
6  1198 (D. Nev. 2008) (quoting Fyssakis v. Knight Equip. Corp., 826 P.2d 570, 571 (Nev.
7  1992)).  Viewing the SAC in the light most favorable to Plaintiffs, the SAC adequately
8  alleges the first strict liability element by stating "the battery equalizer and its component
9  parts were defective as to design, manufacture, and warnings, causing the [RV] and its
10 component parts to be in a dangerous and defective condition that made them unsafe for
11 their intended use."  (SAC ¶ 23.)  The SAC also alleges the second element by stating the
12 alleged defect existed "[a]t all times mentioned in the complaint," i.e., when the defective
13 battery equalizer was designed and manufactured.  (Id.)  Finally, the SAC states the third
14 element because the SAC alleges "[a]s a direct and proximate result of the defective and
15 dangerous condition of the [RV] . . ., the insured's real and personal property were damaged
16 by fire."  (Id. ¶ 24.)

17       Although the SAC does not allege all of the details of the battery equalizer's
18 defect, the SAC alleges more than labels and conclusions.  Because the SAC adequately
19 alleges the battery equalizer was defective at the time the RV left Prevost and the battery
20 equalizer caused the fire and subsequent damages, Plaintiffs' strict liability claim alleges a
21 cause of action upon which relief may be granted.  The Court therefore denies Prevost's
22 motion to dismiss on these grounds.

23       ### D.  Leave to Amend

24       Plaintiffs request leave to amend the SAC for all claims that otherwise fail.
25 Plaintiffs argue Defendants would not be prejudiced because the claims would not change
26 as only additional facts would be added.  Plaintiffs also contend Prevost will not suffer

undue delay from Plaintiffs' amendments, nor is there any allegations of bad faith or dilatory motive.

Prevost replies that Plaintiffs failed to file a motion seeking relief from the Court and Plaintiffs provided no proposed amended pleading. Prevost also contends that dismissal with prejudice is nonetheless proper because Plaintiffs' claims fail under any version of facts. At most, Prevost notes, leave could be granted to permit Plaintiff Safeco Insurance Company to plead "other property" in the strict liability and negligence claims.

Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its pleading any time before trial with leave of the Court. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Four factors are commonly used to determine the propriety of a motion for leave to amend. They are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment." Ditto v. McCurdy, 510 F.3d 1070, 1079 (9th Cir. 2007) (quotation omitted).

Here, Prevost's motion to dismiss is granted as to Plaintiffs' express and implied warranty claims (count 3), and to Plaintiffs' negligence (count 1) and strict liability (count 4) claims to the extent that those two claims allege damage to the RV itself. The Court's dismissal is based on contractual interpretation and the economic loss doctrine. Because the Court is dismissing these claims as a matter of law, granting Plaintiffs leave to amend would be futile as Plaintiffs could not allege a valid cause of action. The Court therefore denies Plaintiffs' request for leave to amend.

///

///

///

///

///

///

15

1  **III. CONCLUSION**

2      IT IS THEREFORE ORDERED that Prevost's Motion to Dismiss (Doc. #63) is

3  hereby GRANTED in part and DENIED in part. The motion is granted as to count one and

4  count four as to Defendant Prevost, to the extent that Plaintiffs allege damages to the RV

5  itself. The motion is also granted as to count three as to Defendant Prevost. The motion is

6  denied in all other respects.

7

8  DATED: December 23, 2008

9

10

11                                PHILIP M. PRO
                                  United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26