1

2

3

4

5

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

6

7

8

PROGRESSIVE INSURANCE
COMPANY; SAFECO INSURANCE
COMPANY,

           Plaintiffs,

9

v.

10

11

12

SACRAMENTO COUNTY COACH
SHOWCASE; COUNTY COACH, INC.;
PREVOST CAR (US), INC.; VANNER,
INC.; and DOES I through X, inclusive,

13

           Defendants.

14

15

AND ALL RELATED ACTIONS

2:07-CV-01087-PMP-LRL

O R D E R

16   Presently before the Court is Cross-Defendant Vanner Inc.'s Motion for

17   Summary Judgment (Doc. #93), filed on February 20, 2009.  Cross-Claimant Premier Motor

18   Coach, Inc. dba Sacramento County Coach Showcase filed an Opposition (Doc. #100) on

19   March 19, 2009.  Vanner Inc. filed a Reply (Doc. #102) on March 30, 2009.

20   **I. BACKGROUND**

21   Plaintiffs Progressive Insurance Company ("Progressive") and Safeco Insurance

22   Company brought this suit to recover amounts paid to Sherry and Jerry O'Connor for

23   damages to the O'Connors' Country Coach motor home (the "O'Connor Coach").

24   Defendants Vanner, Inc. ("Vanner"), Country Coach, Inc. ("Country Coach"), and Prevost

25   Car (US), Inc. ("Prevost") manufactured different parts of the O'Connor Coach. (Premier

26   Motor Coach, Inc. dba Sacramento Country Coach Showcase's Opp'n to Vanner's Mot. for

1   Summ. J. (Doc. #100) ["Opp'n"], Ex. 1 at 62-63.)  Specifically, Vanner produced a battery
2   equalizer system. (Id. at 62.)  Prevost incorporated the Vanner battery equalizer system and
3   other parts into what essentially is a driveable bus with an empty cabin, or "shell." (Id. at
4   70.)  Country Coach then added to the bus shell an interior, a generator, house electrical
5   systems, heating and air conditioning, plumbing, and all things to make the vehicle livable.
6   (Id.)  Upon completion, Country Coach sold the motor home as a Country Coach. (Id.)

7            After a battery balance indicator light turned on in the dashboard of the
8   O'Connor Coach, the O'Connors took it for servicing to Defendant Sacramento Country
9   Coach Showcase ("Sacramento"), which sells and services motor homes. (Opp'n, Ex. 1 at
10  10, Ex. 9 at 12.)  On May 2, 2006, Sacramento's lead technician, Harry Lockwood
11  ("Lockwood"), serviced the O'Connor Coach. (Opp'n, Ex. 1 at 10, 21.)  Prior to
12  diagnosing anything, Lockwood called Country Coach to get information on the battery
13  equalizer system. (Id. at 28.)  Country Coach told Lockwood to contact Vanner because
14  Country Coach did not install that system. (Id. at 29, 64.)

15           Lockwood called Vanner, which instructed him to download the diagnostic
16  routines from Vanner's website. (Id. at 65.)  Lockwood next ran tests on the Vanner battery
17  equalizer and Vanner monitor, which turns on the indicator light on the dashboard. (Opp'n,
18  Ex. 1 at 27, Ex. 2 at 10.)  Lockwood concluded the equalizer and batteries were balanced
19  but that a short existed in the monitor. (Opp'n, Ex. 1 at 26, Ex. 2 at 31.)  Lockwood called
20  Vanner to confirm his procedures and results. (Opp'n, Ex. 1 at 48.)  A Vanner technician
21  concluded the diagnostics seemed to be correct and told Lockwood how to acquire a new
22  monitor. (Id.)  Sacramento told the O'Connors it would put in a new monitor at an
23  upcoming rally the O'Connors were to attend and gave the O'Connors approval to drive the
24  O'Connor Coach home to Nevada. (Opp'n, Ex. 9 at 14.)

25           Upon returning home, the O'Connors parked the O'Connor Coach next to their
26  house and plugged it into the house. (Opp'n, Ex. 8 at 18.)  On May 19, 2006, a fire and

1  explosion occurred in the O'Connor Coach. (Id. at 7, 21.)  Plaintiffs' fire origin expert

2  concluded the fire originated within the engine compartment in an 18 x 24 x 18 inch area

3  containing an electrical cable serving the barbeque, the Vanner monitor, the Vanner

4  equalizer, a battery charger, and two batteries. (Opp'n, Ex. 4 at 3, 13.)  Plaintiffs' other

5  expert, Eugene Meng ("Meng"), concluded a "failure in the Vanner" caused the fire but

6  could not pinpoint exactly what failure. (Opp'n, Ex. 5 at 11, 60.)  Meng also opined that

7  although he did not know exactly what Sacramento did to the O'Connor Coach, Sacramento

8  did not catch the problem and should not have let the O'Connors drive home that day. (Id.

9  at 54.)

10        Plaintiffs originally filed this suit in Nevada state court on July 10, 2007, and

11  Country Coach removed to this Court on August 15, 2007. (Pet. for Removal (Doc. #1).)

12  Plaintiffs filed the Second Amended Complaint on September 18, 2008 against Sacramento,

13  Country Coach, Prevost, and Vanner. (Sec. Am. Compl. (Doc. #72).)  Plaintiffs alleged

14  claims for negligence against Country Coach, Vanner, and Prevost (count 1), negligence

15  against Sacramento (count 2), breach of warranty against all Defendants (count 3), strict

16  products liability against Country Coach, Vanner, and Prevost (count 4), and subrogation

17  against all Defendants (count 5). (Id. at 2-4.)  Sacramento filed a Cross Complaint (Doc.

18  #81) against Country Coach, Prevost, and Vanner for equitable indemnity (count 1) and

19  contribution (count 2).

20        Prevost moved to dismiss Plaintiffs' Second Amended Complaint as to Prevost.

21  On December 23, 2008, the Court granted in part Prevost's motion. (Order (Doc. #86) at

22  16.) The Court dismissed the breach of warranty claim against Prevost. (Id. at 7, 10.) The

23  Court, under the economic loss doctrine, also dismissed the negligence and strict liability

24  claims against Prevost to the extent Plaintiffs alleged damage to the O'Connor Coach itself.

25  (Id. at 12.) Thereafter, Progressive stipulated to the dismissal of Vanner and Country

26  Coach for all claims asserted by Progressive. (Doc. #92, #96.) Vanner now moves for

1 │ summary judgment as to Sacramento's cross-claims for contribution and equitable

2 │ indemnity.[1]

3 │ **II. DISCUSSION**

4 │       Vanner argues that Progressive cannot recover in tort against any party because

5 │ the Court held in its prior Order that Progressive's damages are purely economic losses.

6 │ Therefore, Vanner contends, Sacramento's cross-claims for contribution against Vanner as

7 │ to any claim by Progressive also must fail. Vanner further contends Sacramento cannot

8 │ assert a claim for equitable indemnity against Vanner because the parties' relationship,

9 │ consisting of Sacramento's technician calling Vanner twice and accessing Vanner's

10 │ website, is not enough to create a legal relationship between Sacramento and Vanner.

11 │       Sacramento responds that even though the Court ruled Progressive's losses are

12 │ purely economic, Progressive does not intend to dismiss its negligence claim against

13 │ Sacramento. Sacramento notes that Progressive's experts cannot state the exact cause of the

14 │ fire or what Sacramento did wrong. Further, Sacramento argues that Nevada law for

15 │ contribution and indemnification is inapplicable where a breach of a fiduciary duty occurred

16 │ and an issue of fact remains as to whether Vanner owed such a duty to Sacramento.

17 │ Sacramento also contends that Vanner no longer is a joint tortfeasor with Sacramento as to

18 │ Progressive because Progressive stipulated to its dismissal but, in any event, equitable

19 │ indemnity claims are not limited to joint tortfeasors.

20 │       Vanner replies that Sacramento does not have a right to pursue tort claims against

21 │ Vanner just because Progressive wrongfully continues to press illegitimate tort claims

22 │ against Sacramento. Vanner also contends that allowing Sacramento's claims to continue

23 │

24 │     [1] Although Country Coach filed a joinder to Vanner's motion for summary judgment (Doc.

25 │ #94), Country Coach thereafter filed a notice with the Court stating Country Coach is in Chapter 11 bankruptcy proceedings (Doc. #101). All proceedings related to Country Coach therefore currently are

26 │ stayed. (Doc. #105.)

1  would eviscerate the economic loss doctrine.

2        Summary judgment is appropriate "if the pleadings, the discovery and disclosure
3  materials on file, and any affidavits show that there is no genuine issue as to any material
4  fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).
5  A fact is "material" if it might affect the outcome of a suit, as determined by the governing
6  substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is
7  "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the
8  non-moving party. Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir.
9  2004). Initially, the moving party bears the burden of proving there is no genuine issue of
10 material fact. Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). After the
11 moving party meets its burden, the burden shifts to the non-moving party to produce
12 evidence that a genuine issue of material fact remains for trial. Id. (citing Liberty Lobby,
13 477 U.S. at 248-49). The Court views all evidence in the light most favorable to the non-
14 moving party. Id.

15        **A. Contribution**

16        Under the Nevada Contribution Among Tortfeasors Act, "where two or more
17 persons become jointly or severally liable in tort for the same injury to person or property or
18 for the same wrongful death, there is a right of contribution among them even though
19 judgment has not been recovered against all or any of them." Nev. Rev. Stat. § 17.225.
20 "[C]ontribution allows one tortfeasor to extinguish joint liabilities through payment to the
21 injured party, and then seek partial reimbursement from a joint tortfeasor for sums paid in
22 excess of the settling or discharging tortfeasor's equitable share of the common liability."
23 The Doctors Co. v. Vincent, 98 P.3d 681, 686 (Nev. 2004).

24        Nevertheless, Vanner argues it cannot be liable for contribution for Progressive's
25 claims against Sacramento because those claims fail under the economic loss doctrine.
26 "The economic loss doctrine marks the fundamental boundary between contract law, which

1   is designed to enforce the expectancy interests of the parties, and tort law, which imposes a

2   duty of reasonable care and thereby encourages citizens to avoid causing physical harm to

3   others." Calloway v. City of Reno, 993 P.2d 1259, 1263 (Nev. 2000) (quotation omitted),

4   overruled on other grounds by Olson v. Richard, 83 P.3d 31 (Nev. 2004) (en banc). The

5   economic loss doctrine prohibits unintentional tort actions in which the plaintiff seeks to

6   recover purely economic losses. Terracon Consultants W., Inc. v. Mandalay Resort Group,

7   206 P.3d 81, 86 (Nev. 2009) (en banc). The Nevada Supreme Court has applied the

8   economic loss doctrine in product liability cases, as well as negligence cases unrelated to

9   product liability. Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 879 (9th Cir.

10  2007) (citing Nevada cases). The primary purpose of the economic loss doctrine is "to

11  shield a defendant from unlimited liability for all of the economic consequences of a

12  negligent act, particularly in a commercial or professional setting, and thus to keep the risk

13  of liability reasonably calculable." Terracon, 206 P.3d at 86-87 (quotation omitted).

14          The first step in determining whether the economic loss doctrine prohibits

15  recovery is to ascertain whether the damages are purely economic in nature. Id. at 86.

16  Purely economic loss is a term of art that does not refer to all economic loss but only to

17  economic loss not recoverable as damages in a normal contract suit. Giles, 494 F.3d at 877

18  (citing Calloway, 993 P.2d at 1263). A purely economic loss generally is "the loss of the

19  benefit of the user's bargain including pecuniary damage for inadequate value, the cost of

20  repair and replacement of the defective product, or consequent loss of profits, without any

21  claim of personal injury or damage to other property." Calloway, 993 P.2d at 1263

22  (alterations and quotations omitted).

23          Economic losses therefore are not recoverable "absent personal injury or damage

24  to property other than the defective entity itself." Id. at 1267. For instance, the economic

25  loss doctrine bars recovery in tort when a defective product injures only itself because the

26  tort concern for safety is minimized and such a claim naturally is understood as a warranty

1  claim. Id. at 1264. The same reasoning applies when an integral component of a larger
2  product causes damage to the product itself because "the injury suffered—the failure of the
3  product to function properly—is the essence of a warranty action, through which a
4  contracting party can seek to recoup the benefit of its bargain." Id. at 1267 (quotation
5  omitted).

6       In its prior Order, the Court applied the economic loss doctrine and dismissed
7  Progressive's negligence and strict products liability claims against Prevost to the extent the
8  battery equalizer, as an integral component of the O'Connor Coach, caused damage to the
9  O'Connor Coach itself. This same analysis applies to Vanner's alleged negligence in
10 manufacturing the battery equalizer and related components. Because the economic loss
11 doctrine prohibits a negligence action for damage caused by the battery equalizer to the
12 O'Connor Coach itself, Sacramento cannot seek contribution for those acts from Vanner.[2]
13 Therefore, to the extent Sacramento alleges contribution for Progressive's negligence claim
14 against Sacramento for damages to the O'Connor Coach itself based on Vanner's
15 negligence in manufacturing the battery equalizer and related components, the Court grants
16 Vanner's motion for summary judgment.[3]

17 ///

18

19     [2] Sacramento also argues the applicability of the Nevada Contribution Among Tortfeasors Act
   is not clear because a genuine issue of material fact exists as to whether Vanner owed Sacramento a
20 fiduciary duty. The Nevada Contribution Among Tortfeasors Act does "not apply to breaches of trust
   or of other fiduciary obligation." Nev. Rev. Stat. § 17.305; see also Unif. Contribution Among
21 Tortfeasors Act § 1 cmt. on subsec. g ("It is not intended that the act should extend to liabilities arising
   out of breaches of fiduciary relationships."). Here, neither Progressive's Second Amended Complaint
22 nor Sacramento's Counter Complaint expressly or impliedly alleges a breach of fiduciary duty. In any
   event, no evidence presented by the parties suggests that Vanner owed such a duty to Sacramento. See
23 Hoopes v. Hammargren, 725 P.2d 238, 242 (Nev. 1986) ("[A] fiduciary relationship is deemed to exist
24 when one party is bound to act for the benefit of the other party. Such a relationship imposes a duty
   of utmost good faith.").
25

26     [3] The Court notes that, as was the case in its last Order, this holding does not apply to damage
   to any property not an integral part of the O'Connor Coach itself.

1    However, Plaintiffs' negligence claim against Sacramento is not the same as that
2  against Vanner, Country Coach, and Prevost.  Plaintiffs allege Vanner, Country Coach, and
3  Prevost negligently manufactured and/or installed the battery equalizer and other parts into
4  the O'Connor Coach, thereby causing the fire.  In a separate negligence claim, Plaintiffs
5  allege Sacramento negligently failed to repair the battery equalizer and other parts of the
6  O'Connor Coach and failed to warn the O'Connors about the battery equalizer and other
7  parts, thereby causing the fire.

8    Because the negligence claim against Vanner is based on manufacturing and the
9  negligence claim against Sacramento is based on servicing, the economic loss doctrine does
10  not necessarily apply in the same way to both.  The evidence before the Court also does not
11  indicate the presence of a warranty or contract between Sacramento and the O'Connors,
12  and, thus, it also is unclear whether Plaintiffs' claim against Sacramento is more appropriate
13  in contract.  The parties do not address these issues.  Further, should the Court rule that the
14  economic loss doctrine precludes Sacramento's contribution claim against Vanner, the
15  Court in essence would be holding that the economic loss doctrine precludes Progressive's
16  negligence claim against Sacramento.  However, Progressive has not had the opportunity to
17  defend against dismissal of its negligence claim against Sacramento.  The Court therefore
18  denies Vanner's motion for summary judgment as to contribution to the extent it relates to
19  any involvement of Vanner in Sacramento's alleged negligence in servicing the O'Connor
20  Coach.

21       **B.  Equitable Indemnity**

22    Vanner also moves for summary judgment as to Sacramento's equitable
23  indemnity claim on the grounds that equitable indemnity does not apply to joint tortfeasors
24  absent a legal relationship and Vanner's relationship with Sacramento was not enough to
25  create such a relationship.  Under Nevada law, "'equitable indemnity is a judicially-created
26  construct to avoid unjust enrichment.'"  Scaffidi v. United Nissan, 425 F. Supp. 2d 1159,

1171 (D. Nev. 2005) (quoting Medallion Dev., Inc. v. Converse Consultants, 930 P.2d 115, 119 (Nev. 1997)). "'There is a clear distinction between contribution and indemnity: the former is an equitable sharing of liability while the latter is a complete shifting of liability to the party primarily responsible.'" Id. (alteration omitted) (quoting Medallion Dev., 930 P.2d at 119). "The right of indemnity rests upon a difference between the primary [active] and the secondary [passive] liability of two persons, each of whom is made responsible by the law to an injured party." Black & Decker (U.S.), Inc. v. Essex Group, Inc., 775 P.2d 698, 699 (Nev. 1989) (alteration in original) (quotation omitted). Primary and secondary responsibility differ based on the character of the wrong causing injury and in the nature of the legal obligations each wrongdoer owes to the injured party. Id.

Generally, indemnity is not available between joint tortfeasors. Id. "[F]or one tortfeasor to be in a position of secondary responsibility vis-a-vis another tortfeasor, and thus be entitled to indemnification, there must be a preexisting legal relation between them, or some duty on the part of the primary tortfeasor to protect the secondary tortfeasor." Id. at 699-700.

Here, Plaintiffs allege claims against Sacramento for breach of warranty and negligence in servicing the O'Connor Coach. Sacramento provides Meng's deposition, in which he stated that although Sacramento should not have let the O'Connors drive the O'Connor Coach home that day, he could not pinpoint exactly what Sacramento did wrong in servicing the vehicle. Sacramento also provides evidence that it relied on the representations of Vanner in servicing the O'Connor Coach. From the evidence before the Court, it is not clear whether Sacramento was negligent, whether Vanner contributed to any such negligence, or whether Vanner primarily was responsible for any such negligence. Although equitable indemnity generally is not available between joint tortfeasors absent a legal relationship or duty, a genuine issue of material fact exists as to whether Vanner was a joint tortfeasor with Sacramento as to Plaintiffs' claims against Sacramento. The Court

9

therefore denies Vanner's motion for summary judgment on Sacramento's equitable indemnity claim.

Accordingly, the Court grants Vanner's motion for summary judgment to the extent Sacramento alleges contribution for Progressive's negligence claim against Sacramento for damages to the O'Connor Coach itself based on Vanner's negligence in manufacturing the battery equalizer and related components.  The Court otherwise denies the motion.

**III. SPECIAL ORDER 108**

Exhibits filed in this matter contain the social security numbers, dates of birth, and the full home addresses of individuals not parties to this case.  Under Special Order 108, counsel either should have filed the documents containing these personal identifiers under seal and/or filed redacted copies for the public record.  The Court therefore will order the Clerk of Court to place Sacramento's Opposition to Vanner's Motion for Summary Judgment (Doc. #100-9 and #100-10) under seal, and will order Sacramento's counsel to file redacted copies for the public record within thirty (30) days of the date of this Order.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Cross-Defendant Vanner Inc.'s Motion for Summary Judgment (Doc. #93) is hereby GRANTED in part and DENIED in part.  The motion is granted as to Vanner, Inc. to the extent Sacramento alleges contribution for Progressive's negligence claim against Sacramento for damages to the O'Connor Coach itself based on Vanner's negligence in manufacturing the battery equalizer and related components.  The motion is denied in all other respects.

IT IS FURTHER ORDERED that the Clerk of Court shall place Cross-Claimant Premier Motor Coach, Inc. dba Sacramento's Opposition to Cross-Defendant Vanner's Motion for Summary Judgment (Doc. #100) under seal due to the inclusion of personal identifiers in violation of Special Order 108.

10

1    IT IS FURTHER ORDERED that within thirty (30) days of the date of this

2 Order, Sacramento's counsel shall provide redacted copies of Cross-Claimant Premier

3 Motor Coach, Inc. dba Sacramento's Opposition to Cross-Defendant Vanner's Motion for

4 Summary Judgment (Doc. #100), removing all personal identifiers included therein in

5 violation of Special Order 108.

6

7 DATED:  June 28, 2009

8

9                                                    _____

10                                                   PHILIP M. PRO
                                                     United States District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26